IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| INFOWISE SOLUTIONS, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:04-CV-0553-N |
| | § | |
| MICROSTRATEGY INC., et al., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Plaintiff's Motion for Leave to File First Amended Original Complaint [#64] filed December 17, 2004, Defendants' Motion to Strike Plaintiff's First Amended Original Complaint [#74] received December 22, 2004, Defendants' Motion to Dismiss Plaintiff's Claims for Fraud and Exemplary Damages [#74] received December 22, 2004, and Defendants' Motion for Summary Judgement [#102] filed January 31, 2005. Because the amended complaint exceeds the scope of leave granted in the Court's order filed December 10, 2004 and would unfairly prejudice the Defendants, the Court denies the Plaintiff's motion for leave. Because the Plaintiff does not state a claim for fraud that both satisfies the elements of fraud and is sufficiently particular, the Court grants the Defendants' motion to dismiss. Finally, for the reasons stated below the Court denies the motion for summary judgment on the Plaintiff's contract claim, but otherwise grants the motion.

## I. TRANSACTIONS UNDERLYING THE DISPUTE

On or about November 1, 1999, Plaintiff Infowise Solutions, Inc. ("Infowise") and Defendants MicroStrategy Incorporated and MicroStrategy Service Corporation (collectively, "MicroStrategy") entered into a Reseller Agreement granting Infowise the right to market, distribute, and sublicense MicroStrategy software in the United States and Canada. On July 10, 2001, MicroStrategy and Infowise amended and modified the Reseller Agreement with the Sales Commission Addendum (the "Addendum"). The Addendum provided that Infowise could earn a 5% sales commission from a prospective license of MicroStrategy software to GlaxoSmithKline ("GSK"). On December 11, 2001, MicroStrategy and Infowise executed an Amendment to the Addendum (the "Amendment"), extending the original expiration date of the Sales Commission Addendum until December 31, 2001. (The Reseller Agreement, the Sales Commission Addendum, and the Amendment to the Sales Commission Addendum are referred to collectively as the "Contract.") In December 2001, MicroStrategy licensed software to GSK.

In February 2004, Infowise sued MicroStrategy alleging breach of contract, common law fraud, and, in the alternative, unjust enrichment. Infowise claims that MicroStrategy owes Infowise a sales commission as a result of the 2001 license of MicroStrategy software to GSK, and that its refusal to pay that commission breaches the contract or, in the alternative, unjustly enriches MicroStrategy. Infowise also claims that MicroStrategy fraudulently induced it to enter into the Addendum and the Amendment.

On December 10, 2004, this Court granted MicroStrategy's motion to dismiss the fraud claim, because Infowise's petition failed to allege fraud with particularity as required by Federal Rule of Civil Procedure 9(b), and granted Infowise leave to replead its fraud claim. On December 17, 2004, Infowise filed its First Amended Complaint, repleading its fraud claim and adding allegations unrelated to its fraud claim, and also filed a motion requesting further leave to amend.

## II. INFOWISE'S AMENDED COMPLAINT EXCEEDS THE LEAVE PREVIOUSLY GRANTED

In its December 17, 2004 motion, Infowise moves for leave to amend its complaint to include additional sections in its breach of contract claim.[1] The additional sections go beyond the scope of the leave granted by the Court in the Order of December 10, 2004. Accordingly, the Court evaluates the request for leave to amend independent of the prior order.[2]

Federal Rule of Civil Procedure 15(a) requires that leave to amend be given freely when justice so requires. However, justice is not served if the party opposing would suffer

---

[1] On December 17, 2005, Infowise's filed another motion for leave to amend and its First Amended Complaint. In addition to the repleaded fraud claims, the amended complaint contained additions to Infowise's claim for breach of contract, outlining responses to arguments that had been suggested by MicroStrategy. On December 22, MicroStrategy filed a motion for leave to file motion to strike the first amended complaint and attached the motion to strike. The Court subsequently granted leave.

[2] A better course would have been for Infowise to file a first amended complaint that included only the repleaded fraud claim. Infowise could have then accompanied that filing with the filing of its motion for leave to amend and attached a second amended complaint that included the additional breach of contract sections. The motion to strike by MicroStrategy could then have been styled as a response to the motion for leave.

undue prejudice. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, Infowise offers these amendments after the close of discovery, hindering MicroStrategy's ability to adequately prepare. The new pleadings added do not explain or elaborate the prior pleadings, but rather present new bases why Infowise need not fulfill the Contract's conditions precedent. MicroStrategy has not taken discovery on these heretofore unpled theories. Accordingly, the Court denies Infowise's motion for leave to amend with respect to the amended breach of contract claim. Specifically, the Court strikes the three (3) new sections of the contract claim in the First Amended Complaint, sections 4.03, 4.04, and 4.06.

### III. INFOWISE DOES NOT STATE A FRAUD CLAIM THAT BOTH SATISFIES THE ELEMENTS FOR FRAUD AND IS SUFFICIENTLY PARTICULAR

MicroStrategy again moves to dismiss Infowise's amended claims for fraud on the grounds that they do not meet the heightened pleadings requirement of Rule. 9(b). FED. R. CIV. P. 9(b). Rule 9(b) requires that plaintiffs state averments of fraud with particularity. *Id.* To do this, plaintiffs must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177-78 (5th Cir. 1997); *see also Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004).[3] This rigorous standard applies to omissions as well as explicit statements. *Plotkin v. Ipaxes Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

---

[3]Although this case deals with common law fraud, rather than securities fraud, the application here of Rule 9(b) is the same.

A dismissal for failure to plead fraud with particularity as required by Rule 9(b) is a dismissal on the pleadings for failure to state a claim. *Southland*, 365 F.3d at 361; FED R. CIV. P. 9(b). When considering a motion to dismiss for failure to state a claim, courts must accept a plaintiff's factual allegations as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). However, dismissal is proper "if the complaint lacks an allegation regarding a required element necessary to obtain relief," *Apani Southwest, Inc. v. Coca-Cola Enterprises, Inc.*, 300 F.3d 620, 624 (5th Cir. 2002) (citation omitted), or if it otherwise fails to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Conley v. Gibson*, 355 U.S. 41, 47 (1957); FED. R. CIV. P. 12(b)(6).

The Court's December 10, 2004 Order outlined deficiencies in Infowise's fraud allegations. With the exception of the allegations concerning the June 29, 2001 email, addressed below, the amended complaint fails to cure those deficiencies. Paragraphs 5.02(a) and 5.02(b) are identical to the statement s alleged in the Original Complaint.. (1st Am. Compl. ¶¶ 5.02(a)-(b).) Accordingly, the Court again dismisses the fraud allegations in paragraphs 5.02(a) and 5.02(b) for the same reasons they were dismissed in the December 10, 2004 Order. Paragraph 5.02(c) fails to allege when the statement was made. (1st Am. Compl. ¶ 5.02(c).) Accordingly, the Court dismisses paragraph 5.02(c).

The lone remaining alleged fraudulent statement does not constitute a material representation. Infowise alleges that David Russell of MicroStrategy told Kerry Kiser of Infowise, "I think your work has been strong, and we will work out a fair amount of revenue

for your assistance and guidance," in an e-mail dated June 29, 2001.  (1st Am. Compl. ¶ 5.02(d).)  While this allegation is sufficiently particular, both the statement's timing and content make it legally immaterial.

In order to satisfy both Rules 12(b)(6) and 9(b), a fraud claim must allege the elements of fraud in addition to being particular.[4]  Pure expressions of opinion will not support an action for fraud.  *Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 276 (Tex. 1995).  When parties express such opinions in negotiation for a good or service, they engage in "puffery." "Puffery is an expression of opinion by a seller not made as a representation of fact." *Dowling v. NADW Mktg., Inc.*, 631 S.W.2d 726 , 729 (Tex. 1982); *see also* BLACK'S LAW DICTIONARY 1269 (8th ed. 2004) (definition of "puffery").  A statement's lack of specificity, that it contains imprecise or vague representations, is a factor that indicates the presence of opinion rather than factual representations.  *Angelo Broad., Inc. v. Satellite Music Network, Inc.*, 836 S.W.2d 726, 733 (Tex. App. – Dallas 1992, writ denied) *overruled on other grounds*, *Hines v. Hash*, 843 S.W.2d 464, 469-70 (Tex. 1992).

Kiser made the statement prior to the signing of the Addendum; it did not concern an agreement in place between the parties.  Its referral to "strong work" and "fair revenue" have

---

[4]Specifically, for common law fraud Infowise must allege that: (1) the defendant made the material representation; (2) the material representation was false when made; (3) the speaker either knew the material representation was false, or made it recklessly without knowledge of its truth and as a positive assertion; (4) the speaker made the material representation with the intent that it should be acted upon; (5) the party acted in reliance on the material representation; and (6) the party was injured as a result.  *Herrmann Holdings Ltd. v. Lucent Techs.*, Inc., 302 F.3d 552, 564 n.3 (5th Cir. 2002); *Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 612 (Tex. App. – Waco 2000, pet. denied).

the indefiniteness characteristic of puffery. The statement, therefore, cannot serve as the basis for a fraud claim. Because each statement alleged by Infowise is either insufficiently particular or not fraudulent, the Court accordingly grants MicroStrategy's motion to dismiss the fraud claim.[5]

### IV. MICROSTRATEGY'S MOTION FOR SUMMARY JUDGMENT

In its motion filed January 31, 2005, MicroStrategy moves for summary judgement on Infowise's claims for attorney fees and breach of contract. The Court addresses each claim below.

### *A. Summary Judgement Standard*

Summary judgment is proper when the pleadings and evidence demonstrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). An issue is material if its resolution is potentially outcome determinative. *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Boudreaux v. Swift Transportation Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The Court must accordingly view all facts and inferences in the light most favorable to the nonmoving party. *Id.* at 540.

---

[5]Infowise quotes one additional statement in its amended fraud claim. An internal MicroStrategy email indicates the need to "throw [Infowise] a bone." Infowise does not cite the email as a fraudulent statement, but rather to support an allegation of MicroStrategy's fraudulent intent. As the Court dismisses all alleged fraudulent statements on other grounds, the Court need not address scienter.

### *B. Virginia Law Does Not Award Attorney's Fees for Contract Claims*

MicroStrategy moves for summary judgement on Infowise's claims for attorney's fees, arguing that Infowise is not entitled to recover attorney's fees as a matter of law. The Contract contains a governing law clause designating the Commonwealth of Virginia as the source of law for the Contract. The parties agree that Virginia law governs the Contract.

Virginia law specifies that attorney's fees are not permitted in a breach of contract action unless the contract specifically provides otherwise. *Ryder v. Petrea*, 416 S.E.2d 686, 688 (Va. 1992). Here, the Contract has no provision providing for the payment of attorney's fees. Thus, the collection of attorney's fees by Infowise is barred. The Court has dismissed Infowise's fraud claims and Infowise does not otherwise seek attorney's fees. Accordingly, the Court grants partial summary judgement dismissing Infowise's claims for attorney's fees.

### *C. Breach of Contract*

In Virginia, a plaintiff must establish three elements in order to recover for breach of contract: (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation. *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004).

MicroStrategy argues two bases for granting summary judgement on Infowise's breach of contract claim. First, MicroStrategy contends that the terms of the Contract preclude the recovery of damages for breach. In the alternative, MicroStrategy contends that Infowise did not fulfill their requirements as stated in the Contract, relieving MicroStrategy of any duty to perform. The Court addresses each contention below.

***1. Interpreting the Damages Clause to Prevent Recovery for Breach Would Cause the Contract to Be Invalid for Absence of Consideration.*** – It is black letter, contract law that the formation of a contract requires valid consideration. RESTATEMENT (SECOND) OF CONTRACTS CHAPTER 4, TOPIC 1, intro. note (1981). Where two parties exchange promises, each party must have "the right to hold the other to a positive agreement. Both parties must be bound or neither is bound." *Wexford Bancorp, L.L.C. v. Concept 1, L.L.C.*, 66 Va. Cir. 72, 73 (2004) (quoting *Am. Agric. Chem. Co. v. Kennedy & Crawford*, 48 S.E. 868, 870 (Va. 1904)). Words of promise that by their terms make performance entirely optional do not constitute a promise. RESTATEMENT (SECOND) OF CONTRACTS § 2 cmt. e (1981). Consideration based solely on an illusory promise is not consideration at all.[6] *See Bancorp*, 66 Va. Cir. at 73; 3 RICHARD A. LORD, WILLISTON ON CONTRACTS § 7:7 (4th ed. 2005).

The interpretation of a contract is a question of law. *Garcia Enters. v. Enter. Ford Tractor*, 480 S.E.2d 497, 498-99 (Va. 1997). "A contract must be construed as a whole to determine parties' intent with respect to specific provisions." *Westmoreland-LG & E Partners v. Va. Elec. & Power Co.*, 486 S.E.2d 289, 294 (Va. 1997). Where a business transaction is based on more than one document executed by the parties, a court should construe documents together to determine the intent of the parties. *Daugherty v. Diment*, 385 S.E.2d 572, 574 (Va. 1989). Where a contract may have alternative constructions, one

---

[6]Traditional contracts doctrine characterized this requirement as one of mutuality; however, discussions of mutuality led to confusion and the inappropriate weighing of the worth of each sides' consideration. Modern doctrine clarifies this thinking by holding that a consideration based on a illusory promise is not consideration at all. *See Bancorp*, 66 Va. Cir. at 73; 3 RICHARD A. LORD, WILLISTON ON CONTRACTS § 7:14 (4th ed. 2005).

rendering it valid and the other void, courts will follow the valid interpretation if reasonable. *Merriman v. Cover, Drayton, & Leonard,* 51 S.E. 817, 817 (Va. 1905). Courts will not presume the parties intended an invalid contract.[7] *Id.*; 3 RICHARD A. LORD, WILLISTON ON CONTRACTS § 32:11 (4th ed. 2005).

In the present matter, the Contract between the parties contains limitation of liability provisions. The most significant provision states:

> NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR DAMAGES OF ANY KIND, INCLUDING INCIDENTAL OR CONSEQUENTIAL DAMAGES. Reseller [Infowise] acknowledges that (i) Reseller has no expectation and has received no assurances that any investment by Reseller in the promotion of MicroStrategy Products will be recovered or recouped or that Reseller will obtain any anticipated amount of profits by virtue of this Agreement. THE PARTIES ACKNOWLEDGE THAT THIS SECTION HAS BEEN INCLUDED AS A MATERIAL INDUCEMENT FOR MICROSTRATEGY TO ENTER INTO THIS AGREEMENT AND THAT MICROSTRATEGY WOULD NOT HAVE ENTERED INTO THIS AGREEMENT BUT FOR THE LIMITATIONS OF LIABILITY AS SET FORTH HEREIN.

MicroStrategy contends that this language precludes Infowise from recovering for breach of contract. Specifically, MicroStrategy points to the phrase "neither party shall be liable to the other for damages of any kind." However, such an interpretation would eliminate Infowise's ability to hold MicroStrategy to a positive agreement. This result would render any promise made by MicroStrategy in the Contract illusory. Consideration based on

---

[7]Further, where the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning. *Bridgestone/Firestone, Inc. v. Prince William Square Assocs.*, 463 S.E.2d 661, 664 (Va. 1995). That said, whether a writing is ambiguous is also a question of law, not fact. *Westmoreland*, 486 S.E.2d at 294. Ambiguity exists when contractual language admits to being understood more than one way. *Id.*

an illusory promise would be no consideration at all and the Contract would fail for lack of consideration.[8]  *See Bancorp*, 66 Va. Cir. at 73; 3 RICHARD A. LORD, WILLISTON ON CONTRACTS § 7:7 (4th ed. 2005).

A review of the entire Contract suggests an alternative reasonable and valid interpretation of the liability limitation.  The provisions limiting liability are part of the Reseller Agreement giving Infowise, as the "reseller," a license to market and sublicense MicroStrategy products to third parties.[9]  Additionally, the portion of the Contract subject to dispute for breach is not the Reseller Agreement, but rather the Sales Commission Addendum signed 20 months after the Reseller Agreement.  Given the context of the whole of all the documents signed by the parties, the liability limitation pertains to liability arising from activities such as marketing or sublicensing.  More generally stated, the limitation of liability provision pertains to liability arising from acts undertaken in performance (e.g. marketing and reselling of licenses) of the Contract, not to liability created by the formation of the legally enforceable obligation (i.e., the Contract itself.)  Thus, the Court adopts this

---

[8]MicroStrategy cites no cases supporting its interpretation as possible in a valid contract. The case MicroStrategy does nominally cite in support of its interpretation states only that the absence of injury or damage, not the limitation the of liability for damages by a contract provision, prevents a cause of action.  *Caudill v. Wise Rambler, Inc.*, 168 S.E.2d 257, 259 (Va. 1969).  The elements of a breach of contract claim make this much clear.

[9]Section 2.1 of the Reseller Agreement is the first substantive section of Reseller agreement and is Titled "License Grant."  It begins, "Subject to the fees payable hereunder, MicroStrategy hereby grants Reseller a license to market and sublicense the Product in the territory indicated in exhibit A upon meeting the Program Requirements set forth in Section 3, pursuant to the terms of this Agreement."

reasonable, alternative interpretation of the limitation of liability provision that does not result in the invalidity of the Contract. Accordingly, the Court rejects MicroStrategy's interpretation precluding liability for breach as a basis for summary judgement.

*2. There Is a Genuine Issue of Material Fact Whether Infowise Substantially Complied with Contract Requirements*. – Virginia law uses substantial compliance in multiple contexts as a doctrine of textual interpretation. *Shelton v. Virginia*, 609 S.E.2d 89, 91 (Va. Ct. App. 2005) (referring to use of substantial compliance doctrine in cases involving both statutory interpretation and implied consent to searches). "Substantial compliance with reference to contracts, means that although the conditions of the contract have been deviated from in trifling particulars not materially detracting from the benefit the other party would derive from a literal performance, he has received substantially the benefit he expected, and is, therefore, bound to pay." *Akers v. Barnes*, 315 S.E.2d 199, 201-02 (Va. 1984) (quoting *Newcomb v. Schaeffler*, 279 P.2d 409 (Colo. 1955); emphasis omitted). Materiality of the difference between what is provided and what is required by the contract is pertinent to the question of substantial compliance. *Akers*, 315 S.E.2d at 201. "A minor, trivial difference can be tolerated whereas a material difference cannot." *Id*.

In its motion for summary judgement, MicroStrategy contends that Infowise has not fulfilled the requirements present in section 4 of the Sales Commission Addendum. The section requires that:

> (a) Partner [Infowise] has submitted a Sales Commission Fee Registration form to MicroStrategy. The Sales Commission Fee Registration Form shall, at a minimum consist of a written document providing notice of registration and shall include the name and address of the Prospect [GSK], a

        point of contact, phone number, a narrative assessment of the business opportunity and a description of the Partner's actual and anticipated marketing activities.
            (b) MicroStrategy has accepted the Sales Commission Registration for the applicable Prospect.
            (c) Partner has been primarily responsible for creating and undertaking the sales and marketing activity with the Prospect's organization.

Regarding the first requirement, Infowise contends and offers evidence that they provided the specified information to MicroStrategy, although not in any particular form. With respect to the second, Infowise contends and presents evidence to show that, even if no formal communication declared MicroStrategy's acceptance for purpose of the requirement, MicroStrategy recognized and accepted Infowise's efforts to secure a sales commission. Finally, as to the third requirement, both sides present substantial evidence to demonstrate either the extent or lack of role Infowise played in developing the sale of software licenses to GSK. This evidence creates a genuine issue of material fact whether (a) the information provided, (b) the acceptance obtained, and (c) the sales and marketing activities created and undertook were materially different from the stated Contract requirements.

More importantly, MicroStrategy does not demonstrate any material diminution of a benefit from any variance from strict compliance. The parties dispute only whether the benefit is attributable to Infowise. Both sides acknowledge that MicroStrategy provided software licenses to GSK in exchange for some fees. MicroStrategy neither contends nor presents any evidence to demonstrate that Infowise's failure to strictly comply with the requirements materially detracted from the benefit received. Nor does MicroStrategy contend that some other benefit was materially diminished because of Infowise's deviation

from strict compliance with the requirements.[10]  Viewing all facts and inferences in the light most favorable to the nonmoving party, the Court finds that Infowise presents at least a genuine question of material fact as to whether the performance rendered was materially different from the stated Contract requirements and whether this difference materially detracted from benefits MicroStrategy expected to receive.  Accordingly, the Court denies MicroStrategy's motion for summary judgement on the breach of contract claim.[11]

### V. THE DETERMINATION THAT A VALID CONTRACT GOVERNS PRECLUDES AN UNJUST ENRICHMENT CLAIM

A plaintiff may demand relief under alternative theories.  FED. R. CIV. P. 8(a).  This allows a plaintiff to plead both breach of contract or unjust enrichment claims; however, a plaintiff may not recover under both claims for breach of contract and unjust enrichment.[12]  *See Burlington v. Southwestern Elec.*, 925 S.W.2d 92, 97 (Tex. App. – Texarkana 1996), *aff'd*, 966 S.W.2d 467 (Tex. 1998); *Truly v. Austin*, 744 S.W.2d 934, 936 (Tex. 1988).

---

[10]MicroStrategy does contend that they considered the requirements themselves to be material.  This addresses a different question from whether the difference between what was done and what was required was itself material and is not at issue here.

[11]The Court makes this finding without considering the evidence objected to in Defendants' Objections to Plaintiff's Summary Judgement Evidence and therefore need not rule on those objections.  Further, because the Court makes this finding regarding substantial compliance, it need not consider whether Infowise actually complied with the Contract's requirements.

[12]If a court determines a contract governed the interactions between the parties, then recovery under unjust enrichment will be precluded.  *Burlington*, 925 S.W.2d at 97.  Alternatively, should a contract be found invalid, recovery under that contract would be precluded and a determination on unjust enrichment would be required.  *Id*. (stating recovery under principles of unjust enrichment is appropriate when legal reasons make contemplated agreement void.)

Where a valid, express contract governing the subject matter of the dispute exists the remedy of unjust enrichment becomes unavailable.[13]  *Burlington*, 925 S.W.2d at 97.

As part of its motion for summary judgement, MicroStrategy renews its motion to dismiss Infowise's claim of unjust enrichment.  In a prior order, the Court denied a MicroStrategy motion to dismiss the unjust enrichment claim, holding that Federal Rules of Civil Procedure 8(a) allowed Infowise to plead in the alternative.  Today, however, the Court has construed the Contract's limitation of liability provisions and determined that an express, valid contract governs the subject matter in dispute between the parties.  Neither party has raised any other issue questioning the validity of the contract.  Accordingly, because it is now determined that a valid contract governs, the Court dismisses Infowise's claim of unjust enrichment.

### VI. NO CLAIM REMAINS FOR WHICH EXEMPLARY DAMAGES MAY BE AWARDED

MicroStrategy also renews its motion to dismiss Infowise's claim for exemplary damages, premised on the granting of its motion to dismiss.  Virginia law requires proof of an independent, willful tort, beyond the breach of a duty imposed by contract, as a predicate for an award of punitive or exemplary damages.  *Kamlar Corp. v. Haley*, 299 S.E.2d 514, 517-518 (Va. 1983); *Gonella v. Lumbermens Mut. Cas. Co.*, 64 Va. Cir. 229, 234 (2004). The Court has dismissed Infowise's fraud and exemplary damages claim; only the breach of

---

[13]The parties' briefs indicate that they assume Texas law govern the unjust enrichment claim. The Court will follow this assumption.

contract claim remains. Accordingly, the Court dismisses Infowise's claim for exemplary damages.

    Signed September 29, 2005.

_____
David C. Godbey
United States District Judge